UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
─────────────────────────────  :
SOURCE SEARCH TECHNOLOGIES,     :
LLC,                            :      Civil No. 11-3388(NLH/KMW)
                                :
            Plaintiff,          :              OPINION
                                :
       v.                       :
                                :
KAYAK SOFTWARE CORPORATION,     :
                                :
            Defendant.          :
─────────────────────────────  :
```

**APPEARANCES:**

KAPLAN BREYER SCHWARZ & OTTESEN, LLP
By: Jeffrey I. Kaplan, Esq.
    Daniel Basov, Esq. (pro hac vice)
100 Matawan Road
Matawan, New Jersey 07747
    Counsel for Plaintiff Source Search Technologies, LLC

K&L GATES LLP
By: Rosemary Alito, Esq.
    C. Bryan Cantrell, Esq.
One Newark Center, Tenth Floor
Newark, New Jersey 07102

By: John J. Cotter, Esq. (pro hac vice)
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
    Counsel for Defendant KAYAK Software Corporation


**HILLMAN**, United States District Judge:

    Plaintiff Source Search Technologies, LLC ("Plaintiff" or

"SST") brought this action against Defendant KAYAK Software

Corporation ("Defendant" or "Kayak") alleging infringement of

U.S. Patent No. 5,758,328 (the "'328 Patent") entitled "Computerized Quotation System and Method."

This matter comes before the Court upon Kayak's Motion for Attorneys' Fees ("Defendant's Motion" [Dkt. No. 284]).  Kayak seeks a declaration from this Court this patent case is "exceptional" pursuant to 35 U.S.C. § 285 and requests that this Court grant it attorneys' fees based on the litigation conduct and allegedly meritless arguments put forth by SST.  For the reasons that follow, Defendant's Motion will be **GRANTED-IN-PART and DENIED-IN-PART.**

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The '328 Patent initially issued on May 26, 1998.  <u>See</u> '328 Patent at cover.  Prior to filing the instant case, SST had asserted the '328 Patent before in this district.  SST sued Lending Tree, LLC and others in 2004 in an action before the Honorable Dickinson R. Debevoise.  <u>See</u> <u>Source Search Techs., LLC v. Lending Tree, LLC</u> (<u>Lending Tree</u>), 588 F.3d 1063, 1066 (Fed. Cir. 2009).  Judge Debevoise held a claim construction hearing and construed certain terms of the '328 Patent, and then on summary judgment found the patent infringed, but invalid as

---

[1] Additional history of this case was set out in the Court's opinion finding the '328 Patent invalid under 35 U.S.C. § 101. <u>See</u> <u>Source Search Techs., LLC v. Kayak Software Corp.</u> (<u>Invalidity Opinion</u>), 111 F. Supp. 3d 603, 604-606 (D.N.J. 2015).

obvious. Id. at 1068. The parties appealed the decision, and the Federal Circuit reversed the findings of infringement and invalidity on the basis of an existence of a factual dispute. See id. at 1066. The Federal Circuit adopted the district court's implied construction of the term "quote" to mean "price and other terms of a particular transaction in sufficient detail to constitute an offer capable of acceptance." Id. at 1071, 1075. This was the construction offered by SST and for which SST argued in both the district court and on appeal. (See Pl.'s Opp. [Dkt. No. 288] at 3-4.) On remand, the parties settled the action without further decision from the district court. (See Order (Jan. 19, 2010), [Dkt. No. 283 in No. 04-4420 (DRD)].)

The complaint in this case was filed in June 2011, alleging that Kayak infringed the '328 Patent. (See generally Compl. [Dkt. No. 1].) Then, in August 2011 the U.S. Patent and Trademark Office (the "PTO") undertook an ex parte reexamination of the '328 Patent. See '328 Patent Reexamination Certificate at cover. When the '328 Patent underwent reexamination, the case was stayed. (See Order (Oct. 21, 2011) [Dkt. No. 25].) A Reexamination Certificate issued on March 21, 2013, and as a result three claims were cancelled, two claims were held patentable as amended, and twelve claims were added. See '328 Patent Reexamination Certificate at cover, col. 1 ll. 14-24. The case was reopened in 2013, and SST filed an amended

3

complaint consistent with the reexamination.  (See Order (Feb. 25, 2013) [Dkt. No. 40]; Amend. Compl. [Dkt. No. 43].)

The Court[2] issued a claim construction opinion and order construing the disputed claims on January 27, 2014.  See Source Search Techs., LLC v. Kayak Software Corp. (Markman Opinion), No. 11-3388 (FSH), 2014 WL 314665 (D.N.J. Jan. 27, 2014).  As a result of claim construction, certain claims were held invalid as indefinite.  See id. at *9, 11-13, 18.  Following claim construction, the Court also denied-in-part and granted-in-part a motion for summary judgment by Kayak on June 16, 2014.  Source Search Techs., LLC v. Kayak Software Corp. (Summary Judgment Opinion), No. 11-3388 (FSH), [Dkt. No. 199], (D.N.J. June 16, 2014).[3]  The Court found that Kayak could not limit damages due to the reexamination, Summary Judgment Opinion, slip op. at 5-13, but found that Kayak was entitled to partial summary judgment of non-infringement on the grounds that "if the 'price

_____

[2] This case was originally assigned to the Honorable Faith S. Hochberg who authored the Markman Opinion and Summary Judgment Opinion.  Upon her retirement from the bench, the case was reassigned to the Honorable Joseph E. Irenas.  (See Order (Mar. 9, 2015) [Dkt. No. 258].)  Judge Irenas then authored the Invalidity Opinion.  Judge Irenas unfortunately passed away during the pendency of this motion, upon which the case was reassigned to the undersigned.  (See Order (Oct. 29, 2015) [Dkt. No. 291].)

[3] Although marked "Filed Under Seal", the Opinion was unsealed on June 26, 2014.  (See Order (June 26, 2014) [Dkt. No. 201].)  This opinion was not reported, officially or unofficially, in any commercial legal database.

4

and terms' response from Kayak is insufficient to form a binding contract at that price and upon those terms such that a use cannot simply click 'accept,' or its equivalent, to obtain a binding contract, that search query and response by Kayak does not infringe," id. at 21–26.[4]  In order to clarify what portion of Kayak's activity fell within the scope of the noninfringement ruling, the Court referred the issue to a Special Master.  Id. at 27.  The Special Master issued his Report and Recommendation ("R&R") on March 10, 2015.  (See R&R (Mar. 10, 2015) [Dkt. No. 257].)  The parties filed objections to the R&R in response.  (See SST's Objections [Dkt. No. 259]; Kayak's Objections [Dkt. No. 260].)

A few days after the Court issued its Summary Judgment Opinion, the Supreme Court decided Alice Corp. Pty. Ltd. v. CLS Bank International, 134 S. Ct. 2347 (2014), on the issue of patent eligible subject matter under 35 U.S.C. § 101.  During the pendency of the proceedings before the Special Master, Kayak was granted leave to file another motion for summary judgment on the grounds that the '328 Patent is directed toward patent

---

[4] The Court also found that issues of material fact precluded summary judgment on Kayak's laches defense to limit damages, Summary Judgment Opinion, slip op. at 14–15, on Kayak's anticipation and obviousness arguments, id. at 15–18, and on Kayak's noninfringement argument with respect to "predistributed software," id. at 19–21.  Thus, the Court did not rule on the merits on those issues.

ineligible subject matter.  Invalidity Opinion, 111 F. Supp. 3d
at 606.  After briefing and hearing oral argument, the Court
ultimately concluded that the '328 Patent was invalid under 35
U.S.C. § 101 for claiming an abstract idea and terminated the
case.  Id. at 617.  In so concluding, the Court dismissed
objections to the Special Master's report as moot.  Id.

Kayak then timely filed the instant motion, as well as a
motion for costs [Dkt. No. 283].  On November 13, 2015, the
Clerk granted-in-part and denied-in-part the application for
costs.  (See Clerk's Order (Nov. 13, 2015) [Dkt. No. 294].)  The
Clerk taxed costs for the printed transcripts of four court
hearings and partially taxed the costs for certain depositions.
(Id. at 6-12.)  The Clerk declined to tax the costs for
videotaping depositions and also declined to tax the costs for
the Special Master and costs of legal research.  (Id. at 10-16.)
Kayak's motion seeks fees pursuant to both 35 U.S.C. § 285, the
fee shifting provision of the Patent Act, and the Court's
inherent ability to sanction under 28 U.S.C. § 1927.

## II.  JURISDICTION

This action for patent infringement arises under the patent
laws of the United States.  Accordingly, this Court exercises
subject matter jurisdiction pursuant to 18 U.S.C. § 1331 and
§ 1338(a).

III. **LEGAL STANDARD**

    A. **"Exceptional" Case under 35 U.S.C. § 285**

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court has recently had the chance to clarify the standard to be applied in these cases, and defining an "exceptional" cases as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014) (emphasis added). A party need only prove that it is entitled to fees by a preponderance of the evidence. Id. at 1758.

Determining whether a case is "exceptional" under 35 U.S.C. § 285 is reserved to the discretion of the district court, and is to be assessed under the totality of the circumstances. Id. at 1756; see also Mathis v. Spears, 857 F.2d 749, 755 (Fed. Cir. 1988) ("The methodology of assessing a reasonable award under 35 U.S.C. § 285 is within the discretion of the district court.") (citation omitted). The circumstances the court should consider "include[e] 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of

the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" <u>Octane Fitness</u>, 134 S. Ct. at 1756 n.6 (citing <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 534 n.19 (1994)).

**B.   Sanctionable Conduct under 28 U.S.C. § 1927**

While determination of a case as "exceptional" under 35 U.S.C. § 285 is an issue of Federal Circuit law, the determination of sanctions under 28 U.S.C. § 1927 is an issue of regional circuit law. <u>See Oplus Techs., Ltd. v. Vizio, Inc.</u>, 782 F.3d 1371, 1374 (Fed. Cir. 2015).  Sanctions under this statute "'are intended to deter an attorney from intentionally and unnecessarily delaying judicial proceedings, and they are limited to the costs that result from such delay.'"  <u>In re Prosser</u>, 777 F.3d 154, 161 (3d Cir. 2015) (quoting <u>LaSalle Nat'l Bank v. First Conn. Holding Grp., LLC</u>, 287 F.3d 279, 288 (3d Cir. 2002)).

**IV.  DISCUSSION**

Kayak seeks a declaration that the case is "exceptional" under 35 U.S.C. § 285 or sanctionable under 28 U.S.C. § 1927 on two different grounds:  (1) SST contradicted previous arguments made in the prior case with respect to the meaning of "quote" in arguing for infringement here (Def.'s Mot. Br. at 7–12); and (2) SST contradicted previous arguments made to the PTO in

reexamination with respect to the meaning of "software" in arguing for its proffered construction and for patent eligibility (id. at 12-13.).  Kayak seeks attorneys' fees as well as expert fees and Special Master's fees as a result of SST's litigation conduct.  (Id. at 13-14.)[5]  SST responds that it never changed position on the meaning of "quote" (Pl.'s Opp. at 11-19), and that the arguments with respect to "software" are meritless (id. at 26).  SST further affirmatively argues that the finding of the patents invalidity under 35 U.S.C. § 101 in the wake of the Alice decision cannot be the basis for awarding attorneys' fees back to the beginning of the litigation (id. at 19-22), and that any allegations of misconduct in front of the Special Master or with respect to their expert are baseless (id. at 23-26.)  SST did not make any specific objections to the amount or reasonableness of Kayak's fee calculation.

SST's arguments do not always respond directly to the issues presented by Kayak, so the Court will limit its discussion to the specific arguments presented by the movant, Kayak.  To the extent SST presents relevant affirmative arguments that the case is not exceptional, the Court will address those where appropriate.

---

[5] Kayak noted for the Court that its request for fees may overlap with the request for costs and expressly does not seek double recovery if any costs granted by the Clerk overlap with the fee request.  (See Def.'s Mot. Br. at 13.)

### A.   The Meaning of "Quote"

The dispute between the parties on this issue is whether or not the agreed upon construction of the term "quote" to mean "price and other terms of a particular transaction in sufficient detail to constitute an offer capable of acceptance"[6] means that the offer is "binding" as Kayak believes, or can be subject to conditions as SST submits.  Kayak's argument is that because the construction requires a binding offer, and because this construction was known to SST before the litigation, SST's continued attempts to argue that the construction allows for a non-binding offer renders this case "exceptional" under 35 U.S.C. § 285.  (Def.'s Mot. at 7–12.)  SST responds that its position was both reasonable and correct, that SST never changed its understanding of what "quote" means, and that to change its position as Kayak suggests it did would not have aided SST in this litigation.  (Pl.'s Opp. at 6–19.)

From the Federal Circuit's opinion in <u>Lending Tree</u> it appears that the source of the dispute may arise from the following quote where the court distinguished the claims of the '328 Patent from a piece of prior art:

> The record shows that some of these points about this critical prior art reference remain in factual dispute. For instance, the record reflect that the "quotes"

---

[6] This was the construction of the term put forth by the Federal Circuit.  <u>See</u> <u>Lending Tree</u>, 588 F.3d at 1071, 1075.

> forwarded back to the potential customers in the FAST system were "non-binding, inventory availability responses, not contractual offers." Thus, even where a FAST customer pre-authorized the system to submit an offer on their behalf, this prior art system did not forward a "quote" from a seller, as the term was effectively construed by the district court. Indeed, the potential seller retained the option to reject or to renegotiate the terms of the offer.

Lending Tree, 588 F.3d at 1072 (first emphasis added, second emphasis in original). Kayak seems to read into this that because the offers from the prior art system, which were found not to anticipate the claims of the '328 Patent, were non-binding, then "quote" in the '328 Patent must mean a binding offer.

The Federal Circuit in Lending Tree appears to have meant that for the offer to be "binding" it must be an offer such that the potential seller would not be able to reject or renegotiate the terms. At summary judgment, Kayak argued that because the results displayed on Kayak's website are subject to availability, its offers were not binding. Summary Judgment Opinion, slip op. at 21. SST responded that the court in Lending Tree had noted that "the '328 patent arguably envisions conditions, such as credit verification, that must still be satisfied before a transaction is complete." Id. at 22 (quoting Lending Tree, 588 F.3d at 1075). SST also pointed to Figure 8 of the '328 Patent which purports to be an embodiment of the claimed invention, showing a returned quote that states that the

11

quote is "Subject to Prior Sale," i.e., subject to availability. Id.

The Court in ruling on this issue made clear that a quote could be subject to certain conditions, and "could be a binding contract if the seat is available at that price point," but explained that "requiring further negotiations and consummation with the third party at a later time for acceptance does not constitute an offer capable of acceptance on Kayak's system." Id. at 22-23. Thus, the Court cannot now accept Kayak's characterization that SST was unreasonably shifting positions and attempting to mislead Kayak about how it interpreted the agreed upon construction for the term "quote." (See Def.'s Reply at 3 & n.2).[7]

Kayak's remaining arguments with respect to this issue are based around conduct with respect to the summary judgment motions in front of this Court and in front of the Special Master, and that SST misled the Special Master. (See Def.'s Mot. at 9-12.) The Court disagrees with Kayak's characterization of the proceedings. Examining the record

---

[7] The Court in deciding summary judgment did remark that SST could not be "a chameleon" and argue that a "quote" could be something that the requester could not accept. See Summary Judgment Opinion, slip op. at 24. However, since the Court found that conditions could in fact be attached to the "quote" as explained, the Court will not now read further into the remark.

submitted to the Special Master (see Special Master Materials
(redacted) [Dkt. No. 254] (unredacted and sealed) [Dkt. No.
256]) as well as the extensive record developed in briefing
claim construction and multiple summary judgment motions before
this Court, this Court does not see that SST engaged in any
"misdirection" that could "derail[ ] summary judgment." (See
Def.'s Mot. at 9.) Kayak's displeasure at the Court finding
that there were certain disputed facts that precluded summary
judgment is not grounds for finding the case "exceptional" under
35 U.S.C. § 285. There were no manufactured disputes here.
Rather, this presents a disputed interpretation of a claim
construction wherein both parties disagreed with each other, and
neither side had an unreasonable interpretation of the agreed
upon construction.

Applying the Octane Fitness standard, this is not a case in
which there has been any unreasonable conduct on behalf of SST,
nor does this aspect of the case present a need for deterrence.
Accordingly, the Court will deny Kayak's Motion with respect to
SST's arguments regarding the meaning of "quote" as a claim term
in the '328 Patent.

### B.  The Meaning of "Software" and Alice Briefing

Additionally, Kayak argues that SST's positions with
respect to the meaning of "software" in arguing that its patents

were directed toward patent eligible subject matter were
inappropriate based on arguments SST made to the PTO during
reexamination and in an expert declaration proffered during
claim construction.  (Def.'s Mot. Br. at 12-13.)  Kayak further
argues that once the Alice decision was handed down by the
Supreme Court in June of 2014, SST should have discontinued the
litigation as the '328 Patent was clearly directed toward patent
ineligible subject matter.  (Def.'s Reply at 6-7.)  SST responds
that the law regarding patent eligible subject matter under 35
U.S.C. § 101 was too unsettled in the wake of Alice and that
"SST's pursuit of this litigation, despite ultimately not
prevailing, cannot be deemed meritless or exceptional in any
way."  (Pl.'s Opp. at 19-22.)

     The test under Alice for determining validity under 35
U.S.C. § 101 is a two-step process inquiring into (1) whether
the patent is directed toward patent ineligible subject matter,
i.e., laws of nature, natural phenomena, or abstract ideas; and
(2) if so, whether the claims include a so-called "inventive
concept" which means that "the additional elements 'transform
the nature of the claim' into a patent-eligible application."
Alice, 134 S. Ct. at 2355 (citing Mayo Collaborative Servs. v.
Prometheus Labs., Inc., 132 S. Ct. 1289, 1294-97 (2012)).  What
is interesting here is that SST indeed conceded the first step.
Invalidity Opinion, 111 F. Supp. 3d at 607-08.  Thus, the only

issue was whether the patent survived under the second step of
the _Alice_ test.  Kayak has submitted that is what makes the case
exceptional -- that SST had effectively conceded the second step
of the _Alice_ test as well in previous briefing, but then
reversed course in arguing for validity.  (Def.'s Mot. Br. at
12-13; Def.'s Reply at 6-7.)  Kayak does not appear to be
arguing that SST's position during briefing was objectively
unreasonable in a vacuum; rather, Kayak is arguing that the
constant changing of position is what makes SST's position
unreasonable.

    It is necessary to evaluate what SST has argued at various
stages of prosecution and litigation.  During reexamination of
the '328 Patent, in order to traverse a rejection based on prior
art, SST represented to the PTO that the claimed invention
required two distinct databases -- at least one vendor database
and a central database that would then pull quote terms from
different vendor databases.  (Office Action Response of July 31,
2012 at JA1475-80.)[8]  SST specifically stated, "To pull the terms
of a quote from the vendor database at the 1995 time of the
present invention was _no small task_.  It required _a specific_

---

[8] The full reexamination history of the '328 Patent as well as
the original prosecution history of the '328 Patent were
submitted as part of a joint appendix for the _Markman_ hearing
and separately paginated with "JA" pages numbers, found at Dkt.
No. 86.  The Court will cite to this joint appendix for any
references to the file history or reexamination history.

software interface to be set up between the central computer and the vendor computers . . . ." (Id. at JA1478 n.4 (emphases added).)

Then, in its responsive Markman brief submitted slightly over a year later in October 2013, SST submitted a declaration from Dr. Pramod Pancha. (See Pancha Decl. [Dkt. No. 84-1].) SST relied on Dr. Pancha's declaration to argue that the claim limitation of a "means . . . for generating quotes" is sufficiently definite in view of the specification of the '328 Patent to a person of ordinary skill in the art. (Pl.'s Resp. Markman Br. [Dkt. No. 84] at 11–13.)[9] In making that argument, Dr. Pancha explained that the specification of the '328 Patent "indicates that the system interrogates the vendor product database and cross references into the inventory retrieve pricing and other information necessary to generate the quote." (Pancha Decl. ¶ 5.) Dr. Pancha further explained that "software to perform a database query and pull specified items was well known and in wide use for many years" before the '328 Patent was filed, and that "database query systems go back decades before that, and anyone with a basic software background would have known so at the time." (Id. ¶ 6 (emphases added).) He then

_____

[9] Dr. Pancha's declaration was ultimately excluded from consideration during the Markman hearing due to SST's failure to comply with the Local Patent Rules. See Markman Opinion, 2014 WL 314665, at *11.

opined that in light of the disclosure of the '328 Patent and
the prior art "it would be a very simple matter to write a small
piece of code to pull the terms desired from the vendor
database, assemble them into a data structure and form a quote
from it." (Id. ¶ 7.) The Court noted in its Markman Opinion
that this argument from Dr. Pancha was not in line with what SST
had argued to the PTO in its Office Action Response of July 31,
2012. Markman Opinion, 2014 WL 314665, at *11 n.17. The Court
ultimately concluded that the limitation of a "means . . . for
generating quotes" was indefinite, rendering the claims
containing the limitation invalid. See id. at *12.

When it came to briefing the issue of patent eligible
subject matter, SST then submitted to the court that the
"inventive concept" under the second step of the Alice test for
the remaining claims of the '328 Patent was the "specialized
predefined software interface" that "allows the central computer
to retrieve numerous material contract terms from the vendor
computer." (Pl.'s Opp. to Mot. for Summ. J. of Invalidity [Dkt.
No. 248] at 5.) As support for this, SST pointed to the Office
Action Response of July 31, 2012, citing to the same footnote
that argued it "was no small task" to set up the software. (See
id. at 5, 9, 13, 18.)

Kayak submits it is this back-and-forth in SST's position
that renders its conduct exceptional. (Def.'s Mot. Br. at 12–

17

13; Def.'s Reply at 6-7.)  SST first responds that no inconsistency exists.  (Pl.'s Opp. at 25.)  SST argues that it told the PTO that the invention required establishing a software interface, and that Dr. Pancha's declaration merely affirms that by saying a person of skill in the art would know how to write code to create the interface.  (Id.)  The Court disagrees with SST and finds that there is an inconsistency when comparing the position taken before the PTO and during Alice briefing with the position taking during Markman briefing.  SST's argument overlooks the manner in which the tasks are described.  To the PTO, SST made this task sound like a Herculean undertaking, whereas before this Court in the Markman proceeding, SST's expert said it would be a routine task.  Further, Dr. Pancha makes clear that this type of database query, from one database to another, was something known in the art for decades prior to the filing of the '328 Patent.  The inconsistency is subtle, but it is apparent from the papers.

SST further argues that even if an inconsistency exists, experts are allowed to disagree with the party proffering their evidence.  (Pl.'s Opp. at 26.)  This is a true statement, but an inapposite argument.  SST expressly relied on Dr. Pancha's declaration in telling this Court that the claim term "means . . . for generating quotes" was adequately claimed under 35 U.S.C. § 112.  (Pl.'s Resp. Markman Br. at 11-13.)  In relying on Dr.

18

Pancha's declaration, SST adopted the arguments made by Dr. Pancha; to argue otherwise would be disingenuous.[10]   SST cannot in one breath cite to Dr. Pancha's statements in support of their arguments, and in the next disclaim them as being opinions merely of the expert and not of SST.

In summary, SST first argued for patentability based on it being "no small task" to create a database query, then argued for a claim construction based on the fact that a person of ordinary skill in the art would have been able to use software that existed "for decades" prior to the '328 Patent to make a database query, and finally argued for patent eligible subject matter based on the "inventive concept" of a specialized software to make the database query.  The Court agrees with Kayak that SST changed its positions back and forth to suit the argument of the day.

What is interesting, however, is the fact that SST's position during Alice briefing is the same as its position in submissions to the PTO.  Had SST not been inconsistent during its Markman briefing, there would be no argument here that SST had argued the opposite of its Alice position earlier in the

---

[10] SST's argument that Kayak's expert on the travel industry disagreed with Kayak's corporate representative is distinguishable as those disagreements happened within the context of depositions, and not in the context of submissions to this Court or the PTO.

litigation.  But that is not the case.  If SST had tried to
change course only once and maintained a consistency between its
Markman briefing and Alice briefing, no argument could have been
sustained regarding an "inventive concept" to save the patent
from being directed toward an abstract idea.  The Court sees no
reason why SST should not be held to its earlier positions in
the litigation, even if that position is itself inconsistent
with a position taken even earlier.

However, this does not mean that SST had an affirmative
duty to immediately drop their case once the Supreme Court
decided Alice.  Rather, it was only upon the filing of Kayak's
motion for summary judgment on invalidity under 35 U.S.C. § 101
that SST should have discontinued the litigation.  This was the
unreasonable conduct engaged in by SST -- changing positions
again in order to try and save the validity of the patent.
Under the Octane Fitness standard, the Court finds this supports
a declaration that this case is "exceptional" under 35 U.S.C.
§ 285, in that this flip-flopping "stands out from others with
respect to the substantive strength of a party's litigating
position."  See Octane Fitness, 134 S. Ct. at 1756.  The Court
will, in its discretion, award attorneys' fees to Kayak for
services rendered after Kayak filed its initial Alice brief.
The Court notes that Kayak did not indicate that it was seeking
fees for preparing the instant fee motion.  Accordingly, fees

are not granted for any work done with respect to the fee
motion.

###    C.    Entitlement to Expert Fees and Further Costs

Kayak also requests that because of the bad conduct of SST,
this Court impose Kayak's expert fees and additional costs
beyond what the Clerk found taxable on SST as a sanction under
28 U.S.C. § 1927 or the Court's inherent power to sanction.
(See Def.'s Mot. at 5-6.)  Ordering expert fees as a form of
sanctions "is reserved for cases where the district court makes
a 'finding of fraud or bad faith whereby the very temple of
justice has been defiled.'" MarcTec, LLC v. Johnson & Johnson,
664 F.3d 907, 921 (Fed. Cir. 2012) (quoting Amsted Indus. Inc.
v. Buckeye Steel Castings Co., 23 F.3d 374, 378 (Fed. Cir. 1994)
(internal quotations omitted)).[11]  "The use of this inherent
power is reserved for cases with 'a finding of fraud or abuse of
the judicial process.'" Takeda Chem. Indus., Ltd. v. Mylan Labs,
Inc., 549 F.3d 1381, 1391 (Fed. Cir. 2008) (quoting Amsted, 23
F.3d at 378).  Even considering SST's changing position on the
meaning of "software," this is not the type of case to rise to
such a level.  Further, no evidence has been submitted that SST

---

[11] Although Federal Circuit case law is not binding on this
issue, it is persuasive.

"intentionally and unnecessarily delay[ed] judicial
proceedings." See In re Prosser, 777 F.3d at 161.

The fee shifting provision of the Patent Act provides only
for the award of "reasonable attorney fees to the prevailing
party." 35 U.S.C. § 285. Kayak has not met its burden of
demonstrating to this Court that it is entitled to anything more
than its attorneys' fees under 35 U.S.C. § 285, and as such any
request for sanctions under 28 U.S.C. § 1927 or the Court's
inherent power to sanction will be denied.

### D.   Calculation of Fees

Having concluded that at least a portion of this case is
"exceptional" under 35 U.S.C. § 285 and awarding fees to Kayak
in its discretion, the Court next will determine the amount of
fees to which Kayak is entitled. Local Civil Rule 54.2 governs
fee awards, and requires the party seeking fees to provide
certain materials to the Court, including affidavits setting
forth the nature of services rendered, a record of the dates and
times of services rendered, a description of the services
rendered on each date, a description of the professional
experience of each person rendering services, the normal billing
rate for each person rendering services, any fee agreements, and
the amounts actually billed to the client and paid by the
client. See L.Civ.R. 54.2(a)-(b).

"The determination of reasonable attorney fees is . . . 'a matter that is committed to the sound discretion' of a district court judge." Lumen View Tech. LLC v. Findthebest.com, Inc., 811 F.3d 479, 483 (Fed. Cir. 2016) (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 558 (2010)).  "In calculating an attorney fee award, a district court usually applies the lodestar method, which provides a presumptively reasonable fee amount by multiplying a reasonable hourly rate by a reasonable number of hours required to litigate a comparable case." Id. (citing Perdue, 559 U.S. at 551, 554); see also Sullivan v. DB Investments, Inc., 667 F.3d 273, 330 (3d Cir. 2011) (explaining that the lodestar method is typically applied in this circuit in statutory fee shifting cases).  "The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable.

To meet its burden, the fee petition must 'submit evidence supporting the hours worked and rates claimed.'" Rode v. Dellarciprete, 892 F.2d 1117, 1183 (3d Cir. 1990) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); accord Wagner v. Shinseki, 733 F.3d 1343, 1349 (Fed. Cir. 2013).  Even if the fee motion is unopposed, the party seeking fees still must meet its burden of proving reasonableness." See Spectrum Produce Distrib., Inc. v. Fresh Mktg., Inc., Civ. No. 11-6368 (JBS/KMW), 2012 WL 2369367, at *3 (D.N.J. June 20, 2012) ("Even in a

23

default judgment case, therefore, Plaintiff must establish the threshold reasonable lodestar to the Court's satisfaction.")

### 1.  Hourly Rate

In order to apply the lodestar method, the Court must first determine the appropriate hourly rate for each person rendering services.  "To show the reasonableness of a requested rate, counsel 'must produce satisfactory evidence -- in addition to their own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  Spectrum Produce, 2012 WL 2369367, at *4 (internal modifications omitted) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).

Kayak was represented by numerous attorneys in this case, but only seeks fees for the Boston-based attorneys at K&L Gates, LLP who performed "the vast majority of the work" in this matter.  (Cotter Decl. [Dkt. No. 284-2] ¶ 5.)  Those five attorneys include two partners, two associates, and one attorney who was elected to partnership during the pendency of the case.  (See id. ¶¶ 18-19.)  Firm biographies were submitted for each of the five attorneys, (see Cotter Decl. Exhibits [Dkt. No. 284-3], Ex. J), and their experience briefly summarized in the attorney declaration submitted on behalf of Kayak, (see Cotter Decl.

24

¶ 18).  Kayak requests different rates for each of the five attorneys, ranging from a low of $337/hour to a high of $781/hour.  (Id. ¶ 19.)

In order to establish the prevailing rate for this type of litigation, Kayak refers to the Report of the Economic Survey prepared by the American Intellectual Property Law Association ("AIPLA") in 2013 (the "AIPLA Report").  However, Kayak has failed to submit the AIPLA Report into the record for this Court's review.  (See Cotter Decl. ¶ 20 (referring the Court to AIPLA's website where the AIPLA report is only available for a fee).)[12]  Kayak does offer that the range of billing for all intellectual property work nationwide based on the AIPLA report ranges from $267/hour to $768/hour.  (See id.)  On this alone, Kayak's requested fees for certain of its attorneys are outside the average range.  (See id. ¶ 19 (requesting $781/hour for the highest billing attorney).)  Kayak offers no evidence aside from

---

[12] The Court notes that Kayak should have been aware of this issue.  Kayak pointed to the decision of the court in Accusoft Corporation v. Quest Diagnostics, Inc., No. 12-cv-40007, 2014 WL 1393749 (D. Mass. Apr. 7, 2014), as evidence that a previous court found its attorney's requested rate of $750/hour reasonable.  (See Cotter Decl. ¶ 20.)  In the very same footnote to which Kayak refers this Court in support of its rate being reasonable, the court in Accusoft remarked "To support their claim that their rates are reasonable, Defendants submitted a link to the American Intellectual Property Law Association's 2013 Report of the Economic Survey.  The Court was not able to access the information via the link."  Accusoft, 2014 WL 1393749, at *2 n.5 (citation omitted).

the declaration of its own attorney for why this Court should
grant a fee above the average range.

Faced with an absence of evidence, the Court cannot say
that any of Kayak's requested fees are reasonable.  In light of
this deficiency, Kayak's will be granted leave to supplement its
filings.  More specifically, Kayak will be granted leave to file
supplemental documentation in support of the reasonableness of
the hourly rates requested for each attorney within fourteen
(14) days of the entry of the accompanying order.  If Kayak
still wishes to rely on the AIPLA Report, then Kayak must submit
the actual document into the record.  SST will not be permitted
any response having failed to raise any initial objection to the
reasonableness of the rates requested.

### 2.   Time Reasonably Expended

Although unable to determine the reasonableness of the
rates requested, the Court will proceed to the next step in the
lodestar analysis, which is to determine the hours reasonably
expended by Kayak's attorneys.  As explained above, Local Civil
Rule 54.2 requires detailed affidavits and supporting documents
that include a record of the dates on which services were
rendered, a description of the services rendered on each date,
an identification of who rendered services on each date, and the

26

time spent rendering such services on each date.  See L.Civ.R.
54.2(a).

However, Kayak has only proffered a summary of invoices
that reflect the date of the invoice, the amount of fees, and
the amount of costs for each invoice, (see Cotter Decl.
Exhibits, Ex. A), and a summary of how many hours each attorney
billed, (see id. at Ex. B).  As other courts of this district
have explained, this is insufficient to comply with the
requirements of Local Civil Rule 54.2.  See, e.g., Holt's Co v.
Hoboken Cigars, LLC, Civ. No. 09-3782 (WJM), 2010 WL 4687843, at
*5 (D.N.J. Nov. 10, 2010) (rejecting a request for fees where
the party "merely provide[d] a final total of hours per attorney
as well as their billing rates" and requiring "descriptive time
entries or other support" in accordance with Local Civil Rule
54.2); Downey v. Coalition Against Rape & Abuse, Inc., Civ. No.
99-3370 (JBS), 2005 WL 984394, at *10 (D.N.J. Apr. 27, 2005)
(requiring a more specific breakdown of time and effort expended
by the attorney on specific tasks to support a partial fee
award).  This Court is similarly not satisfied with the
generalized descriptions of the work done, as the Court cannot
evaluate the amount of time spent by each attorney in their
work, nor can the Court accurately determine what work falls
within its limited fee award.

Accordingly, Kayak will be granted leave to file supplemental documentation in support of the reasonableness of the time expended by each attorney within fourteen (14) days of the entry of the accompanying order.  Kayak's supplemental submission is limited only to those hours that fall within the ambit of this Court's limited fee award -- the hours expended on this case subsequent to the filing of Kayak's initial <u>Alice</u> brief.  Because Kayak did not delineate with any specificity the time spent on each task or the time each attorney spent on the task in this initial fee petition, SST will be granted leave to file objections to Kayak's supplemental submission within fourteen (14) days of the supplemental documentation being filed.[13]

**V.   CONCLUSION**

For the foregoing reasons, the Court will grant-in-part Defendant Kayak's Motion to declare this case "exceptional" pursuant to 35 U.S.C. § 285 and award attorneys' fees to Kayak

---

[13] This is clearly in contrast to not permitting SST a response with respect to the rates requested.  However, Kayak did at least explain who was requesting what rate, why the rates were requested for each attorney, and provide a biography for each attorney.  This was sufficient information for SST to lodge an objection that the requested rates were too high or otherwise unreasonable.  SST has not been afforded the same opportunity here where Kayak merely provided a total number of hours each attorney billed and the total number of hours billed per month without allocating those hours to any task.

for hours expended after Kayak filed its initial motion for summary judgment of invalidity under 35 U.S.C. § 101. Defendant's Motion is otherwise denied.

Kayak will be granted leave to file supplemental documentation in support of its fee request within fourteen (14) days as explained above.  SST will be granted leave to file supplemental objections only to the hours requested by Kayak within seven (7) days of Kayak's supplemental submission.


Date:   __March 31, 2016__

                              __s/ Noel L. Hillman__
                              NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

29